﻿Citation Nr: AXXXXXXXX
Decision Date: 06/20/19 Archive Date: 06/20/19

DOCKET NO. 190524-6996
DATE: June 20, 2019

ORDER

Entitlement to service connection for bilateral hearing loss is denied.

Entitlement to service connection for tinnitus is granted.

FINDINGS OF FACT

1. The Veteran has hearing loss for VA purposes, but it is not related to his military service.

2. The Veteran’s tinnitus began in service and has continued since service.

CONCLUSIONS OF LAW

1. The criteria for service connection for hearing loss have not been satisfied. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385.

2. The criteria for service connection for tinnitus have been satisfied. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from December 1953 to December 1956 and October 1957 to March 1960, including service in Korea.

This matter comes before the Board of Veterans’ Appeals (Board) from a May 2019 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO). The Veteran has elected direct review by the Board.

Service Connection

Generally, to establish service connection, a claimant must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called “nexus” requirement. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303; see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

VA has established certain rules and presumptions for chronic diseases, such as an organic disease of the nervous system like sensorineural hearing loss or tinnitus. See 38 C.F.R. §§ 3.303(b), 3.307, 3.309(a); Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013). With chronic diseases shown as such in service so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless attributable to intercurrent causes. 38 C.F.R. § 3.303(b). If chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. § 3.303(b). In addition, for veterans who have served 90 days or more of active service during a war period or after December 31, 1946, chronic diseases are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 C.F.R. §§ 3.307(a)(3), 3.309(a).

In the May 2019 rating decision, the RO made favorable findings that the Veteran had current hearing loss and tinnitus disabilities. 

1. Bilateral hearing loss 

The Veteran contends that his hearing loss is due to his military service.

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies of 500, 1000, 2000, 3000 and 4000 Hertz (Hz) is 40 decibels or greater; or when the thresholds for at least three of these frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993).

The Board acknowledges that some of the Veterans service treatment records from his first period of service may have been destroyed in an accidental fire. The Veteran’s entrance examination from his second period of service in October 1957 and separation examination in March 1960 show that the Veteran’s hearing was within normal limits. The Veteran did not report any hearing issues at separation.

As sensorineural hearing loss is not shown to have been present during service or in the first year after separation of service, and continuity of symptomatology leading to a diagnosis of sensorineural hearing loss is not shown, in-service incurrence of sensorineural hearing loss cannot be presumed. See 38 C.F.R. §§ 3.307, 3.309(a). To the extent the Veteran asserts a continuity of symptomatology beginning during service (see January 2019 statement), the Board finds these statements to lack credibility as they are in direct conflict with the Veteran’s report of medical history at separation from service where he denied having experienced ear trouble. The Board finds the report of medical history at separation from service to be more reliable than more recent assertions as it was done contemporaneous to service and for the purpose of identifying disability at that time. It is noted that on this report of medical history the Veteran reported multiple disabilities, such as a strained muscle in 1959 regarding a question about “pain or pressure in chest,” and the Board would expect that he would have identified hearing loss if present when asked about ear trouble. 

The Veteran underwent a VA examination in February 2019. Here, the Veteran was found to have hearing loss for VA purposes. The examiner opined that it was less likely than not that the Veteran’s hearing loss was related to his service as the pure tone thresholds at the time of separation were within normal limits and his military occupation as a supply systems analyst had a low probability for hazardous noise exposure. It was also noted that the Veteran had more than 30 years of post-service occupational noise exposure. 

In the June 2019 Appellant’s Brief, the Veteran’s representative cites to multiple reports, suggesting they support a grant of service connection. Pertinent to the hearing loss claim, the representative notes that the first report, from the National Academy of Science, indicates the specific noise levels causing hearing loss can vary. The Board concedes that noise exposure can cause hearing loss; however, that does not mean that this Veteran’s hearing loss resulted from his noise exposure during service. 

The representative argues that two other reports, (“Acceleration of Age-Related Hearing Loss by Early Noise Exposure: Evidence of a Misspent Youth.” The Journal of Neuroscience (2006) and “Toward a Differential Diagnosis of Hidden Hearing Loss in Humans.” PLoS One (2016), provide evidence that noise exposure at an early age results in hearing loss that is typically not evident on routine audiologic testing at that time and only becomes evident when unmasked by the aging process due to loss of redundancy of the neural pathways. The Board has reviewed these studies. 

Regarding the study from The Journal of Neuroscience, in the introduction the study acknowledges that hearing losses that accumulate with chronic exposure to high-level sound (noise-induced hearing loss) and those we attribute to age (age-related hearing loss or presbycusis) often coexist in the same ear. The study’s conclusion is essentially that ears with noise-exposure histories age differently from those without. 

The study from PLoS One is about cochlear synaptopathy, which is called “hidden hearing loss” because it can hide behind a normal audiogram. The study looked at frequencies between 8 and 16 kHz, which are frequencies not contemplated by VA for hearing loss disability purposes. 38 C.F.R. § 3.385. The study notes that while cochlear synaptopathy has little effect on the thresholds for pure tones in a quiet environment, it likely compromises the ability to understand complex stimuli, like speech, in difficult listening situations. The study further notes that it is well known that two people with the same audiogram, whether normal or abnormal, can have different speech discrimination abilities, especially in a noisy environment. The report indicates that the study shows that high-risk subjects (based on self-reports about possible ear damage) reported increased difficulty in noisy environments and have poorer speech discrimination scores when the task is made difficult by adding masking noise, or time-compression and reverberation. Similar to the findings in The Journal of Neuroscience, the PLoS One study notes that noise damage early in life likely accelerates the age-related further loss of hair cells and cochlear neurons. 

At best, these studies suggest that age-related hearing changes can progress differently for people who have had ear damage earlier in life. No medical professional has indicated that this is the case for this Veteran, and it is noted that the Veteran seeks service-connection for noise-induced hearing loss and not age-related hearing loss. To the extent the Veteran’s representative is arguing that age-related hearing loss should be service connected, the Board disagrees as service connection is for disability from injury or disease incurred coincident with service and not age-related changes after service. 38 C.F.R. § 3.303. To the extent that the studies suggest that people with ear damage early in life have increased difficulty recognizing speech in noisy environments, even if this is the case, that does not mean that a hearing loss disability, which is clearly defined in 38 C.F.R. § 3.385 and does not include consideration of hearing in noisy environments, was caused by ear damage early in life. These studies do not suggest that hearing loss in the frequencies tested by VA and considered in determining if a hearing loss disability is present would not be evident on routine audiologic testing. 

None of the cited studies indicate that this Veteran, who did not have hearing loss for VA purposes at separation from service and had additional noise exposure after service, has additional noise-induced hearing loss later in life that was not identified at separation from service. Simply put, the evidence is against a finding of a delayed onset of a hearing loss disability for VA benefits purposes due to military noise exposure. 38 C.F.R. § 3.385. 

The Board has considered the Veteran’s statements, to include his assertions that his hearing loss is related to military service. As the Veteran is not shown to have medical education or experience, he is a lay person and is competent to report (1) symptoms that are observable to a layperson, e.g., diminished hearing; (2) symptoms at the time supporting a later diagnosis by a medical professional; or (3) a contemporaneous medical diagnosis. See Davidson v. Shinseki, 581 F.3d 1313 (2009). The Veteran is not competent to independently render a medical diagnosis or opine as to the specific etiology of a condition as these are medically complex issues. Thus, his lay assertions do not constitute evidence upon which service connection can be granted. In any event, the Board ultimately assigns greater probative weight to the medical evidence of record, to include the opinion rendered by a trained medical professional based on appropriate diagnostic testing and reasonably drawn conclusions with supportive rationale. As to the lay statements regarding hearing loss beginning during service, as explained above, these statements are found to lack credibility in light of statements made contemporaneous to separation from service. 

The Board finds that service connection for bilateral hearing loss is not warranted. The examiner opined that it was less likely than not that the Veteran’s bilateral hearing loss was related to service which is consistent with the evidence of record, such as the normal hearing evaluation from separation from service accompanied by the Veteran’s report at separation that he had not experienced any hearing loss, and the fact that the Veteran had significant occupational noise exposure after service. Service connection for bilateral hearing loss is denied.

2. Tinnitus

The Veteran reported that his tinnitus began during his first period of service when he was in Korea and was around diesel engines, diesel generators, and artillery fire without hearing protection. 

The Veteran underwent a VA examination in February 2019. The examiner opined that the Veteran’s tinnitus was less likely than not related to his military service as there were no complaints of tinnitus in service, his military occupation of a supply systems analyst had a low probability of hazardous noise exposure, and that the Veteran had 34 years of occupational noise exposure without the use of hearing protection.

Although the Veteran’s service treatment records from his first period of service are missing, it was confirmed that the Veteran served in Korea during this time. Since that time, the Veteran has consistently and credibly stated that his tinnitus had onset in service and has continued since. A lay person is competent to state whether he has, or has had, tinnitus. See Charles v. Principi, 16 Vet. App. 370, 374 (2002). Despite the negative medical opinion, the Veteran has consistently reported that he first experienced tinnitus in service. 

Given the above, the Board finds that the evidence demonstrates that tinnitus, a chronic disease, was present during service and currently, and service connection for tinnitus is accordingly granted. See C.F.R. § 3.303(b).

 

Nathan Kroes

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. Shuster, Attorney Advisor

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.